# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **IONICS EMS, INC.,** | § | |
| Plaintiff, | § § § | |
| vs. | § § | CIVIL ACTION NO. 5:20-cv-1404 |
| **VYSK COMMUNICATIONS, INC.,** | § § § | |
| Defendant. | § § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, Ionics EMS, Inc. ("Plaintiff" or "Ionics") hereby files its Original Complaint (the "Complaint") asserting claims against Vysk Communications, Inc. ("Defendant" or "Vysk), and respectfully states as follows:

### I.

### PARTIES

1. Plaintiff Ionics is a company incorporated under the laws of the Philippines, with a registered office at 14 Mountain Drive, Light Industry and Science Park of the Philippines II, Calamba Laguna, Philippines.

2. Defendant Vysk is a Delaware corporation with its registered office located at 200 Concord Plaza, Suite 620, San Antonio, Texas 78216. Vysk may be served through its registered agent, Victor Cocchia, at 13750 San Pedro, Suite 270, San Antonio, Texas 78232, or wherever he may be found.

### II.

### JURISDICTION AND VENUE

3. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a).

4. This Court also has supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

5. This Court has both general and specific jurisdiction over Vysk because it maintains its principal place of business in San Antonio, Texas, which lies within the territorial boundary of the San Antonio Division of the Western District of Texas and a substantial part of Vysk's wrongful conduct against Ionics took place in the San Antonio Division of the Western District of Texas. Furthermore, Section 17.8 of the OEM Agreement that is the subject of this Complaint provides that both Vysk and Ionics expressly consent to the exclusive jurisdiction of state or federal courts in the state of Texas.

6. Venue is proper in the Western District of Texas under 28 U.S.C. § 1391(b)(1), in that Defendant's principal place of business is in San Antonio, and under 28 U.S.C. § 1391(b)(2), in that a substantial part of the events or omissions giving rise to the claim occurred in the Western District of Texas. Furthermore, section 17.8 of the OEM Agreement that is the subject matter of this Complaint provides that both Vysk and Ionics expressly consent to the exclusive venue of state or federal courts in the state of Texas.

## III.

## FACTS COMMON TO ALL ALLEGATIONS

7. Ionics is a global leader in turn-key electronics manufacturing services. It has eight manufacturing facilities located in the Philippines and is traded on the Philippines stock exchange. With more than four decades of experience, Ionics has worked with a range of world-class Original Equipment Manufacturers producing products for household names in the telecommunications, automotive, medical, consumer electronics, computer, and other industries.

8. Vysk designs, develops, and distributes private, secure communications solutions. In or around 2015, Vysk approached Ionics regarding the manufacturing of certain products for

the iPhone 5 series as well as other products. Based on the quantities discussed by Vysk, Ionics agreed to manufacture the products.

9. Ionics and Vysk entered into an OEM Agreement on November 23, 2015 (the "Contract").[1] The Contract provided that Ionics would manufacture, assemble, package, and ship the "Product"[2] to Vysk at the prices and upon the terms and conditions of the Contract.

10. Section 7.2 establishes the payment procedure between the parties. Vysk was required to pay all undisputed invoice amounts thirty (30) calendar days after the date of the invoice. In case of parts, payment was required to be made before orders were released to the suppliers.

11. In the early stages of the Contract, Vysk would pay Ionics an advance payment, meaning when Vysk released a purchase order, Vysk would pay 100% of the required payment before Ionics delivered the product. Soon after, the parties agreed to a 50% down payment with the balance to be paid as Ionics shipped the product. During that time, Vysk experienced problems in its design, which prevented Ionics from proceeding with the manufacturing of the Product. Eventually, Vysk corrected its design deficiencies, but its corrections resulted in changes to the materials used for production. The amount due to Ionics increased. Vysk was not able to pay the amounts due under the invoices issued by Ionics.

12. Ionics attempted to work with Vysk in connection with Vysk's efforts to pay the amounts it owed. Ionics agreed to allow Vysk to continue to order more Product from Ionics and Vysk would allow Ionics to charge more on those invoices to help make up for the amount due.

---

[1] Out of an abundance of caution, Plaintiff has not attached any documents, including the Contract, to the Complaint to avoid disclosure of confidential information.
[2] Section 2.1 of the Contract refers to "Product" as the Product Specifications in Exhibit A of the Contract, the packaging and other material or media relating to the Product, and any other components or products as the Parties may agree.

However, Vysk's debt continued to grow. Due to the size of the debt, Ionics demanded payment from Vysk of all amounts past due. At that point, Vysk stated that it could not pay the amounts past due unless Ionics agreed to ship more products. Furthermore, Vysk was focusing its activities on the iPhone 6 series and abandoning its design for the iPhone 5 series. As a result, the Parties entered into the Memorandum of Understanding dated February 9, 2017 ("MOU").

13. Pursuant to the MOU, Vysk was required to pay Ionics $10,000.00 per month beginning February 10, 2017 to help satisfy the debt. This amount was to be credited towards Vysk's past-due balance. The MOU also provided that Vysk agreed to the addition of $25.00 per unit to its unit price of the Product beginning on May 1, 2017, to help reduce its debt. Vysk and Ionics agreed to amortize that debt over a total of 24,000 units, which were to be manufactured in the year 2017. Vysk further agreed to a minimum number of units to be purchased in each of the months of May through December 2017. If those monthly minimums were not met, Vysk was required to pay the difference between (a) the minimum required quantities multiplied by $25.00 per unit, and (b) the actual number of units manufactured multiplied by $25.00 per unit (the "Minimum Payment"). Finally, the MOU provided that all new material purchases would be paid in advance to prevent Vysk's outstanding past-due balance from increasing.

14. Prior to the execution of the MOU, Vysk owed Ionics $1,286,093.52. Since the execution of the MOU, Vysk has made debt-reduction payments totaling $518,498.30. But since September 2017, Vysk has failed to pay any further amount toward the debt despite its contractual obligations to do so. Currently, Vysk owes Ionics $767,595.22.

## IV.

## CAUSES OF ACTION

**A.     Count One – Breach of Contract**

15.     Ionics incorporates the above paragraphs as though fully stated herein.

16.     Ionics and Vysk entered into valid and enforceable contracts in the form of the Contract and the MOU.

17.     Ionics performed its obligations under both the Contract and the MOU.

18.     Vysk breached the Contract by failing to pay Ionics the invoiced amounts in accordance with the Contract.

19.     Moreover, Vysk failed to comply with the MOU by failing to pay for the debt owed and by failing to purchase the minimum number of units to be produced for the months of May through December 2017. Vysk further failed to comply with the MOU by failing to pay the Minimum Payment.

20.     As a result of Vysk's repeated failures to perform its obligations, Ionics has been damaged in the amount of $767,595.22 pursuant to the Contract and the MOU.

**B.     Count Two – Promissory Estoppel**

21.      Ionics incorporates the above paragraphs as though fully stated herein.

22.     In addition, or in the alternative, the facts set forth above entitle Ionics to recover $767,595.22 under the theory of Promissory Estoppel

**C.     Count Three – Unjust Enrichment**

23.     Ionics incorporates the above paragraphs as though fully stated herein.

24.     In addition, or in the alternative, the facts set forth above entitle Ionics to recover $767,595.22 under the theory of Unjust Enrichment.

## V.

## **ATTORNEYS' FEES, COSTS, AND INTEREST**

25. Ionics incorporates the above paragraphs as though fully stated herein.

26. Because of Defendant's wrongful acts, Ionics has been required to retain the services of the law firm of McGuire, Craddock & Strother, P.C. to prosecute its claims. Ionics has agreed to pay its attorneys reasonable fees and expenses for their services. Ionics is entitled to recover its reasonable and necessary attorneys' fees and expenses incurred in the prosecution of this lawsuit pursuant to Section 17.8 of the Contract and Chapter 38 of the Texas Civil Practice and Remedies Code.

27. Ionics is entitled to prejudgment and post-judgment interest at the highest lawful rates.

## VI.

## **CONDITIONS PRECEDENT**

28. All conditions precedent to Ionics' recovery of the relief sought in this action have been performed, satisfied, or waived.

## VII.

## **PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, Plaintiff Ionics EMS, Inc. respectfully prays that the Court:

i. cite Defendant to appear and answer;

ii. render judgment against Defendant for all damages Ionics is entitled to recover under applicable law, including, but not limited to, compensatory damages, statutory damages, pre-judgment and post-judgment interest, reasonable attorneys' fees and expenses, and costs of suit; and

iii. award Ionics all such other and further relief, at law or in equity, to which it may show itself justly entitled.

DATED: December 10, 2020	Respectfully submitted,

*/s/ Steven H. Thomas*

Steven H. Thomas
State Bar No. 19868890
MCGUIRE, CRADDOCK & STROTHER, P.C.
500 N. Akard Street, Suite 2200
Dallas, Texas 75201
Phone: (214) 954-6800
Facsimile: (214) 954-6850
Email: sthomas@mcslaw.com


**ATTORNEYS FOR PLAINTIFF,
IONICS EMS, INC.**